**Appeal No. 14-16456**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**RECO PRIANTO,**

*Plaintiff-Appellant,*

v.

**EXPERIAN INFORMATION SOLUTIONS, INC.,**

*Defendant-Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
HONORABLE THELTON E. HENDERSON
CASE NO. 3:13-CV-03461-TEH**

---

**APPELLEE'S ANSWERING BRIEF**

---

Julia Fong Sheketoff
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700
E-mail: jsheketoff@jonesday.com

\* Admitted in New York
Supervised by member of D.C. Bar

Nathaniel P. Garrett
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700
E-mail: ngarrett@jonesday.com

Attorneys for Defendant-Appellee
EXPERIAN INFORMATION
SOLUTIONS, INC.

## FEDERAL RULE OF APPELLATE PROCEDURE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Experian Information Solutions, Inc. is a wholly-owned subsidiary of Experian plc, which is a publicly-held corporation. No other publicly-held corporation owns 10% or more of Experian Information Solutions, Inc.'s stock.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    QUESTION PRESENTED.......................................................................2

III.   STATEMENT OF THE CASE .................................................................2

    A.   Prianto Defaults On His Loans. ....................................................2

    B.   Prianto Sues Heritage Pacific and Experian Under the FCRA....................3

    C.   The District Court Grants Experian Judgment On the Pleadings
          Because the FCRA Does Not Obligate Experian to Adjudicate the
          Legal Validity of Prianto's Debt. ..................................................6

IV.    STANDARD OF REVIEW .....................................................................9

V.     SUMMARY OF ARGUMENT .................................................................9

VI.    ARGUMENT.......................................................................................12

    A.   LEGAL FRAMEWORK.................................................................12

        1.   Section 580b of California's Anti-Deficiency Laws............................13

        2.   Fair Credit Reporting Act....................................................15

    B.   THE DISTRICT COURT SHOULD BE AFFIRMED BECAUSE
          EXPERIAN'S REPORT OF PRIANTO'S DEBT CONTAINED
          NEITHER PATENT NOR LATENT INACCURACY...........................17

        1.   Experian's Report Was Not Latently Incorrect................................18

        2.   Experian's Report Was Not Patently Incorrect.................................28

    C.   PRIANTO SHOULD RESOLVE HIS DISPUTE WITH THE
          FURNISHER OF INFORMATION...........................................32

    D.   *CARVALHO* REJECTED PRIANTO'S ARGUMENT THAT AN
          EXPLANATORY STATEMENT IS INSUFFICIENT. ..........................39

VII.   CONCLUSION....................................................................................41

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alborzian v. JPMorgan Chase Bank, N.A.*,
 235 Cal. App. 4th 29 (2015) .................................................................30

*Anderson v. Trans Union LLC*,
 367 F. Supp. 2d 1225 (W.D. Wis. 2005) ..............................................21

*Bank of Am., NA v. Roberts*,
 217 Cal. App. 4th 1386 (2013) ............................................................26

*Cahlin v. Gen. Motors Acceptance Corp.*,
 936 F.2d 1151 (11th Cir. 1991) ...........................................................21

*Carvalho v. Equifax Info. Servs., LLC*,
 629 F.3d 876 (9th Cir. 2010) ...................................................... passim

*Clayton Dev. Co. v. Falvey*,
 206 Cal. App. 3d 438 (1988) ...............................................................23

*Coker v. JP Morgan Chase Bank*,
 312 P.3d 829 (Cal. 2013) .....................................................................26

*Coker v. JP Morgan Chase Bank, NA*,
 218 Cal. App. 4th 1 (2013) ..................................................................26

*Conley v. Matthes*,
 56 Cal. App. 4th 1453 (1997) ..............................................................23

*Cornelison v. Kornblush*,
 15 Cal.3d 590 (1975) ...........................................................................13

*DeAndrade v. Trans Union LLC*,
 523 F.3d 61 (1st Cir. 2008) ........................................................... 19, 20

*DeBerard Props. v. Lim*,
 20 Cal. 4th 659 (1999) .................................................................. 23, 27

*Dennis v. BEH–1, LLC*,
 520 F.3d 1066 (9th Cir. 2008) .......................................................9, 16

## TABLE OF AUTHORITIES
### (continued)

**Page**

*DMC, Inc. v. Downey Sav. & Loan Ass'n,*
   99 Cal. App. 4th 190 (2002) ...................................................................25

*Drew v. Equifax Info. Servs., LLC,*
   690 F.3d 1100 (9th Cir. 2012) ...............................................................17

*Dunlap v. Credit Prot. Ass'n LP,*
   419 F.3d 1011 (9th Cir. 2005) .................................................................9

*Dworkin v. Hustler Magazine Inc.,*
   867 F.2d 1188 (9th Cir. 1989) ...............................................................21

*Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.,*
   66 Cal. App. 3d 101 (1977) ...................................................................23

*Gorman v. Wolpoff & Abramson, LLP,*
   584 F.3d 1147 (9th Cir. 2009) ................................................. 15, 17, 33

*Gottschalk v. Draper Cos.,*
   23 Cal. App. 3d 828 (1972) ............................................................ 29, 30

*Guardian Sav. & Loan Ass'n v. MD Assocs.,*
   64 Cal. App. 4th 309 (1998) ...................................................................27

*Guimond v. Trans Union Credit Info. Co.,*
   45 F.3d 1329 (9th Cir. 1995) ...........................................................9, 16

*Hales v. Snowden,*
   19 Cal. App. 2d 366 (1937) ...................................................................13

*Herrera v. LCS Fin. Servs. Corp.,*
   No. C09-2843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) ..................... 29, 32

*In re Flo-Lizer, Inc.,*
   946 F.2d 1237 (6th Cir. 1991) ...............................................................38

*In re Neal,*
   176 B.R. 30 (Bankr. D. Idaho 1994) .....................................................38

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ........................................................... 14, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Santa Clara Cnty. Fair Ass'n, Inc.*,
   180 B.R. 564 (B.A.P. 9th Cir. 1995) ................................................................38

*Johnson v. Wells Fargo Home Mortg., Inc.*,
   No. 13-01044, 2013 WL 7211905 (C.D. Cal. Sept. 13, 2013) ..................... 31, 38

*Kerivan v. Title Ins. & Trust Co.*,
   147 Cal. App. 3d 225 (1983) ...............................................................................27

*Kuns v. Ocwen Loan Servicing, LLC*,
   611 F. App'x 398 (9th Cir. 2015) ............................................................... passim

*Lyon v. Chase Bank USA, N.A.*,
   656 F.3d 877 (9th Cir. 2011) ................................................................................9

*McKay v. Ingleson*,
   558 F.3d 888 (9th Cir. 2009) ..............................................................................28

*Mortg. Guar. Co. v. Sampsell*,
   51 Cal. App. 2d 180 (1942) ......................................................................... 29, 30

*Murphy v. Ocwen Loan Servicing, LLC*,
   No. 2:13-CV-555-TLN-EFB, 2014 WL 2875635 (E.D. Cal. June 24, 2014)30, 38

*Palm v. Schilling*,
   199 Cal. App. 3d 63 (1988) .......................................................................... 23, 24

*Prunty v. Bank of Am.*,
   37 Cal. App. 3d 430 (1974) .................................................................................34

*Redingler v. Imperial Sav. & Loan Ass'n*,
   47 Cal. App. 3d 48 (1975) ........................................................................... 29, 30

*Romo v. Stewart Title of Cal.*,
   35 Cal. App. 4th 1609 (1995) ..............................................................................29

*Roseleaf Corp. v. Chierighino*,
   59 Cal. 2d 35 (1963) ............................................................................................14

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ..............................................................................................15

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Saunders v. Branch Banking & Trust Co. Of Va.*,
  526 F.3d 142 (4th Cir. 2008) ..................................................34

*Spangler v. Memel*,
  7 Cal. 3d 603 (1972) ..........................................................27

*Union Bank v. Wendland*,
  54 Cal. App. 3d 393 (1976) ...................................................23

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ...........................................................31

*United States v. Robertson*,
  52 F.3d 789 (9th Cir. 1994) ..................................................28

*Vargas v. Bank of Am., N.A.*,
  No. 12-CV-2247-L, 2013 WL 1386342 (S.D. Cal. Apr. 4, 2013) ...........30

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .................................................21

### Statutes

11 U.S.C. § 362 ...................................................................... 37, 38

15 U.S.C. § 1681a ........................................................................4

15 U.S.C. § 1681e .............................................................. 4, 5, 6, 16

15 U.S.C. § 1681i ................................................................. passim

15 U.S.C. § 1681s-2 ......................................................... 3, 4, 15, 16

Cal. Civ. Code § 3300 ..................................................................14

Cal. Code Civ. Proc. § 1060 ...........................................................33

Cal. Code Civ. Proc. § 3 ...............................................................13

Cal. Code Civ. Proc. § 580a ...........................................................14

Cal. Code Civ. Proc. § 580b ...................................................... passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Cal. Code Civ. Proc. § 580d ....................................................................14

Cal. Code Civ. Proc. § 726 .....................................................................14

## Rules

Fed. R. Bankr. P. 3001 ...........................................................................39

Fed. R. Bankr. P. 7001 ...........................................................................38

Fed. R. Civ. P. 12 ..............................................................................9, 21

## Other Authorities

Black's Law Dictionary (10th ed. 2014) ...............................................19

Dennis L. Greenwald, et al., Cal. Prac. Guide Real Prop. Trans. (Rutter 2014).....25

Restatement (Second) of Contracts § 345 (1981)..................................13

## I.  <u>INTRODUCTION</u>

This case asks whether the Fair Credit Reporting Act ("FCRA") requires a consumer reporting agency to adjudicate a borrower's dispute with his creditor about the legal enforceability of his debt.  Plaintiff Reco Prianto stopped repaying a loan held by Heritage Pacific Financial LLC ("Heritage Pacific").  Heritage Pacific reported that information to Experian Information Solutions, Inc. ("Experian"), which accurately reported the amount and status of Prianto's debt on his consumer credit report.  Prianto sued Experian, claiming the information on his consumer report was inaccurate because Experian failed to adjudicate his legal argument that Heritage Pacific would be unable to obtain a deficiency judgment against him pursuant to California Code of Civil Procedure § 580b.

The premise of Prianto's claim is foreclosed by *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010), which held that a consumer who challenges the legal validity of a debt should either resolve the dispute with the *furnisher* directly or draft an explanatory statement for consumer reporting agencies to include on their credit reports.  What a consumer in Prianto's position may not do, however, is collaterally attack the legal validity of his debt by suing the consumer reporting agency.  Yet that is precisely the course Prianto has taken here, in clear contravention of *Carvalho*.  Because Experian is entitled to judgment on the pleadings, this Court should affirm.

## II.  QUESTION PRESENTED

Plaintiff Reco Prianto disputed Experian's reporting of a defaulted loan on the ground that the holder of that loan, Heritage Pacific, cannot obtain a deficiency judgment against him under California Code of Civil Procedure § 580b.  Experian communicated Prianto's dispute to Heritage Pacific, which then verified the accuracy of the debt and instructed Experian to continue reporting it.  The question presented is whether Prianto's consumer report is "inaccurate" under the Fair Credit Reporting Act because Experian did not adjudicate the merits of Prianto's asserted legal defense to liability.

## III.  STATEMENT OF THE CASE

### A.  Prianto Defaults On His Loans.

On April 11, 2007, Prianto purchased a residence in Sacramento, California. ER 49 ¶ 6.  Prianto financed the purchase with two loans from Aurora Bank FSB, secured by first and second deeds of trust.  *Id.* ¶ 7.  The second loan, in the amount of $97,800, was transferred or sold to Heritage Pacific.  *Id.* ¶ 8.

In September 2008, Prianto stopped paying his loans.  ER 49 ¶ 9.  The holder of the first deed of trust initiated proceedings that resulted in a trustee's sale on January 20, 2009.  *Id.*  The proceeds of the trustee's sale did not cover the amount Prianto owed to Heritage Pacific.  *Id.* ¶ 10.  Heritage Pacific thus became a "sold-out junior lienholder."  *Id.*

Beginning in June 2011, Heritage Pacific reported to Experian that Prianto's loan account "was past due in the amount of $96,601." ER 49 ¶ 12. Experian thereafter began to include this information in its consumer credit reports regarding Prianto. ER 51 ¶ 24.

In January 2012 and May 2013, Prianto sent letters to Experian disputing its report of his Heritage account. *Id.* ¶ 20. Prianto did not contest that he had taken out a loan held by Heritage or that he failed to pay back that loan. *Id.* Nor did Prianto quibble with the amount of money reported. *Id.* Rather, he alleged that Heritage's report of the debt was misleading because it was "not legally possible" he would be required to pay. *Id.*

Upon receiving Prianto's dispute letters, Experian sent Heritage requests for verification of Prianto's dispute. ER 51 ¶ 21. In response, Heritage verified the information by reporting again to Experian that Prianto had a past-due loan account in the amount of $96,601. *Id.* ¶ 23. Experian continued to report this information. *Id.* ¶ 24.

### B. Prianto Sues Heritage Pacific and Experian Under the FCRA.

Prianto filed suit against Heritage Pacific and Experian under the FCRA on July 25, 2013. ER 57. Under the FCRA, Heritage is considered a "furnisher" of information because it reports consumer credit information to consumer reporting agencies like Experian. *See* 15 U.S.C. § 1681s-2. Experian is a consumer

reporting agency ("CRA") under the FCRA.  ER 48 ¶ 3; 15 U.S.C. § 1681a(f).  In light of their distinct functions, the FCRA imposes different requirements on furnishers and CRAs.  *Compare, e.g.*, 15 U.S.C. § 1681s-2 (obligations of furnishers), *with* 15 U.S.C. § 1681i (obligations of CRAs).

Prianto alleged that Heritage Pacific violated the FCRA's requirements for furnishers by failing to adequately investigate his dispute and accurately report information to Experian.  *See* 15 U.S.C. § 1681s-2(b); ER 51-53.  However, on January 14, 2014—and after Heritage Pacific appeared in the case—Prianto and Heritage Pacific filed a stipulated dismissal.  *See* ER 59 (Docket Entry No. 33).  Prianto represented that he agreed to dismiss Heritage Pacific because it filed for bankruptcy protection.  Pl.'s Mem. in Opp'n to Mot. for J. on the Pleadings at 3:8-9, *Prianto v. Heritage Pac. Fin., LLC*, No. 3:13-cv-3461-TEH (N.D. Cal. Apr. 7, 2014), ECF No. 44.

Prianto alleged that Experian violated the FCRA's obligations for CRAs by failing to sufficiently *re*investigate his dispute and to use adequate reporting procedures.  *See* 15 U.S.C. §§ 1681i, 1681e(b); ER 53-54.  The FCRA's reinvestigation provision, § 1681i, is implicated when a consumer disputes the accuracy or completeness of information in his file; it requires the CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information"

4

within 30 days of the dispute. 15 U.S.C. § 1681i(a)(1)(A). The FCRA's accurate reporting provision, § 1681e(b), requires CRAs like Experian, when preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Both of Prianto's FCRA claims against Experian are predicated on his legal argument that, under California Code of Civil Procedure § 580b, Heritage Pacific "is barred from obtaining a judgment" for the money he still owes on his loan. ER 50 ¶ 14. Prianto reasons that because § 580b supposedly bars Heritage from obtaining a deficiency judgment, § 580b legally "extinguish[es]" his loan. ER 49 ¶ 10. Accordingly, even though Prianto admits he took out a loan held by Heritage and that he failed to pay it back, *id.* ¶¶ 6-9, Prianto concludes that Experian was wrong to have reported the debt as past due. The Complaint seeks compensatory, statutory, and punitive damages, injunctive relief, and attorney's fees and costs. ER 54.

Experian answered on November 11, 2013. ER 59 (Docket Entry No. 23). It moved for judgment on the pleadings on March 24, 2014. ER 60 (Docket Entry No. 42).

**C.** **The District Court Grants Experian Judgment On the Pleadings Because the FCRA Does Not Obligate Experian to Adjudicate the Legal Validity of Prianto's Debt.**

The district court granted Experian's motion for judgment on the pleadings. ER 3-17.  The court observed that to state a claim under either § 1681e(b) or § 1681i, Prianto bears the burden of showing that his consumer report contained "patently inaccurate or materially misleading information."  ER 8.  And, in light of the pleadings, the district court concluded Prianto could not make that showing as a matter of law.

First, the court held that nothing about Experian's consumer report was "patently inaccurate."  ER 9-12.  Judge Henderson explained that, even *if* § 580b applies and prohibits Heritage Pacific from obtaining a deficiency judgment, as Prianto presumes, "section 580b does not eliminate the underlying debt."  ER 11. In fact, the court noted that it could not find a single case holding that a CRA could be held liable under the FCRA for correctly reporting the existence of a debt covered by § 580b.  *Id.*  The court reasoned that since Prianto conceded the Heritage Pacific debt belonged to him and that the amount reported was accurate, a CRA could not be liable for correctly reporting the *existence* of the debt.  ER 11-12.

Second, the district court rejected Prianto's argument that Experian's report of his debt was latently inaccurate, *i.e.*, materially misleading, because it omitted

an explanation that the debt was not legally enforceable under § 580b. ER 12-16. Contrary to Prianto's argument on appeal (AOB at 11), Judge Henderson did *not* hold that the "materially misleading" standard is inapplicable to CRAs like Experian. Rather, invoking *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010), the district court held CRAs are not required to adjudicate "disputed legal questions," such as the applicability of § 580b to a particular loan. ER 13.

Notably, the district court acknowledged that the FCRA does permit "claims regarding a *furnisher's* reporting of section 580b debt" under the "technically accurate but materially misleading standard." ER 12 (citing cases; emphasis in original). In this respect, Judge Henderson's opinion anticipated this Court's subsequent memorandum disposition in *Kuns v. Ocwen Loan Servicing, LLC*, 611 F. App'x 398 (9th Cir. 2015), in which a borrower sued the *furnisher* of information for reporting a debt that the furnisher *did not dispute* was covered by § 580b. *Kuns* held that the plaintiff stated a claim when the furnisher reported the debt "without being accompanied by additional information to indicate Kuns' lack of personal liability." *Id.* at 399.

The district court, however, distinguished that fact pattern from Prianto's allegation that Experian violated the FCRA by declining to adjudicate the validity of his § 580b defense when the furnisher of information (Heritage Pacific)

instructed Experian to continue reporting the debt.  ER 15.  Judge Henderson explained:

> Experian is not "equipped to adjudicate" the legal dispute between Plaintiff and Heritage, assess whether the Heritage loan is in fact subject to section 580b, and whether Plaintiff may successfully invoke the anti-deficiency defense in the absence of an actual lawsuit by Heritage to collect upon its loan:  in other words, Plaintiff is not permitted to launch a "collateral attacks on the legal validity" of the Heritage loan as a FCRA reinvestigation claim.

ER 15 (quoting *Carvalho*, 629 F.3d at 892).  If the rule were otherwise, the district court reasoned, CRAs like Experian would be obligated "to decline to report information about the disputed item 'simply because the consumer asserts a legal defense,' a proposition *Carvalho* squarely rejects."  *Id.*

The district court explained that, rather than sue Experian for failing to adjudicate his dispute with the furnisher of information, Prianto should have resolved his dispute with Heritage Pacific directly or filed an explanatory statement on his credit report, as authorized by 15 U.S.C. § 1681i(b)-(c).  ER 15.  Instead, however, Prianto "dismissed Heritage, and does not appear to have otherwise disputed the obligation at the furnisher level via legal process so as to create an actionable claim against Experian."  *Id.*  Nor, the court noted, did Prianto file an explanatory statement with Experian.  *Id.*  Accordingly, the court concluded, "Experian had no duty to resolve the disputed legal validity of the underlying debt or refrain from reporting on it."  ER 16.  This appeal followed.

## IV.   STANDARD OF REVIEW

A district court's order granting judgment on the pleadings pursuant to Rule 12(c) is reviewed de novo.  *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).  The district court's order should be affirmed "when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Dunlap v. Credit Prot. Ass'n LP*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam).

## V.   SUMMARY OF ARGUMENT

In order to make out a prima facie violation of the FCRA's accurate reporting and reinvestigation provisions, Prianto must show that Experian's reporting of his past-due loan account with Heritage was either patently or latently inaccurate.  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (accurate reporting provision); *Dennis v. BEH–1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (reinvestigation provision).  He cannot.  The district court thus correctly granted Experian's motion for judgment on the pleadings.

**1.**  Prianto has failed to allege that there was an actionable *latent* inaccuracy in Experian's report of his past-due account with Heritage Pacific.  The FCRA does not compel CRAs to assess a consumer's legal defense to the validity or enforceability of a debt.  Experian thus was not required to resolve Prianto's legal

9

dispute with Heritage Pacific over whether § 580b would bar Heritage from obtaining a deficiency judgment in a court of law.

In seeking reversal, Prianto *assumes* the § 580b affirmative defense is available to him, erroneously maintaining that there is "no legal dispute that Mr. Prianto could not be made to pay the deficiency." AOB at 7; *accord id.* at 17. That is simply wrong.[1] After Experian advised Heritage Pacific of Prianto's dispute, Heritage Pacific instructed Experian to continue reporting his $96,601 debt. ER 51 ¶¶ 20-23. Under *Carvalho*, Prianto cannot coerce Experian into adjudicating his legal dispute with Heritage Pacific.

*Amici* contend *Carvalho* is distinguishable because a CRA *is* the proper entity to adjudicate a purchaser's § 580b defense. In their view, it is entirely appropriate for Experian to investigate the facts and then determine whether Prianto would prevail on the law. *Amici*'s position is squarely foreclosed by *Carvalho*, and grossly oversimplifies the complexities involved in ascertaining whether a purchaser is entitled to the protections of § 580b. Nothing in either the opening or amicus briefs calls into doubt the district court's reasoned

---

[1] Certainly, Prianto cannot mean that Experian forfeited the argument by failing to make it in the district court. The principal argument advanced by Experian's motion for judgment on the pleadings was that the FCRA "does not obligate Experian to presume Prianto's innocence and edit his credit report when the furnisher of the information, Heritage Pacific, does not agree with his legal characterization of the debt." Def.'s Mot. for J. on the Pleadings at 10:10-12, *Prianto v. Heritage Pac. Fin., LLC*, No. 3:13-cv-3461-TEH (N.D. Cal. Mar. 24, 2014), ECF No. 42.

determination that Experian has no duty to resolve Prianto's legal dispute about the enforceability of his Heritage Pacific debt, or to refrain from reporting on it.

**2.**  Nor do the allegations in Prianto's complaint identify any *patent* inaccuracy in his consumer report.  Although Prianto forfeits the argument, *Amici* suggest that Experian's consumer report was patently inaccurate because § 580b bars enforcement of Heritage Pacific's loan and, therefore, the consumer report should have reflected a $0 outstanding balance.  To begin with, *Amici*'s patent inaccuracy theory is again based on the mistaken assumption that the FCRA compels Experian to resolve the merits of Prianto's legal defense and, further, that Experian should have done so in Prianto's favor.

But even assuming that Prianto would prevail on his § 580b defense, *Amici*'s argument suffers from an additional, independently fatal flaw.  Section 580b does not extinguish a debt; it merely eliminates a creditor's ability to seek a deficiency judgment.  And because a debt covered by § 580b continues to exist, precluding a creditor from reporting the amount of the deficiency would contravene the FCRA's purpose of providing accurate credit information to potential creditors.  Federal courts have thus uniformly rejected *Amici*'s position that the debt must be reported with a $0 balance.

**3.**  Although Prianto cannot collaterally attack the legal validity of his debt through a FCRA claim against Experian, he is not without remedy.  As *Carvalho*

instructs, Prianto may resolve his dispute directly with the furnisher of information: Heritage Pacific. If and when Prianto obtains either Heritage Pacific's agreement that his debt is unenforceable under § 580b or a court adjudication of the same, *then* he can insist that Experian amend his report accordingly.

**4.** Prianto can also file an explanatory statement for Experian to include on his consumer report. Prianto disparages this statutory remedy, claiming that creditors will not pay sufficient attention to his explanation. But Prianto's attorney made the same argument to the *Carvalho* panel, and the panel rejected it. *Carvalho* explained that, if anything, Prianto's critique reinforces the importance of disputing the debt at the furnisher level. Prianto, however, never attempted to directly resolve his dispute with Heritage before suing Experian and, after filing suit, dismissed Heritage from the case. *Carvalho* does not sanction this approach. The district court's order granting judgment on the pleadings should be affirmed.

## VI.   <u>ARGUMENT</u>

### A.   LEGAL FRAMEWORK.

Prianto contends that Experian violated the FCRA's reinvestigation and accurate reporting provisions by reporting a debt that cannot be collected pursuant to § 580b of California's anti-deficiency laws. Experian provides a brief overview of § 580b and the relevant provisions of the FCRA.

12

### 1. __Section 580b of California's Anti-Deficiency Laws.__

It is axiomatic that one party to a contract may generally seek a personal money judgment against the other party for his breach of the contract. *See* Restatement (Second) of Contracts § 345(a) (1981). Under California law, there are narrow exceptions to that general rule, and § 580b of the anti-deficiency laws is one of them.

At the time Prianto took out the loan at issue, § 580b provided in relevant part:

> No deficiency judgment[2] shall lie in any event … under a deed of trust … on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

Cal. Code Civ. Proc. § 580b (2012); *see also* ER 9.[3] Section 580b thus prevents a lender from obtaining a personal money judgment against a borrower who defaults

---

[2] A deficiency judgment is "a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Cornelison v. Kornblush*, 15 Cal.3d 590, 603 (1975).

[3] Section 580b was amended in 2012 and then again in 2013. Those amendments are irrelevant to the analysis here, however, because amendments to § 580b do not apply retroactively to previously effectuated loans. *See Hales v. Snowden*, 19 Cal. App. 2d 366, 368-69 (1937); *see also* Cal. Code Civ. Proc. § 3 ("No part" of the California Code of Civil Procedure "is retroactive, unless expressly so declared."). In any event, the 2012 amendment to § 580b made no material changes to above-quoted language. And while the 2013 amendment does contain materially different language, Prianto has forfeited any argument that the 2013 provision applies here. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 n. 6

on a loan when, *inter alia*: (1) the lender accepted a deed of trust as security for the loan; (2) the loan was used to pay all or part of the purchase price of a dwelling; (3) the dwelling is occupied by the purchaser; and (4) the dwelling is for four families or fewer.  *Id.*

Where these conditions are *not* met, however, California law generally permits a lender to obtain a personal judgment against a borrower.  *See* Cal. Civ. Code § 3300.  As the California Supreme Court has explained, "*[i]n the absence of a statute to the contrary*, a creditor secured by a trust deed or mortgage on real property may recover the full amount of the debt upon default.  He may realize the security or sue on the obligation *or both* ...."  *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 38 (1963) (emphasis added).  For example, California law makes plain that a party in Heritage Pacific's position—that is, a sold-out junior lienholder holding a deed of trust—*may* recover a deficiency judgment against the borrower where § 580b is not applicable because the loan at issue is not a purchase-money loan.  *See id.* (deficiency judgment available in such circumstances because § 580a, § 580d, and § 726 of the California Code of Civil Procedure do not apply to sold-out junior lienholders).

---

(continued…)

(9th Cir. 1995) (issues not raised in an appellant's opening brief are not considered by court).

In short, *if* Prianto is entitled to the protections of § 580b, as he presumes, Heritage Pacific is not permitted to obtain a deficiency judgment against him. But if § 580b does *not* apply, either because Prianto's loan does not satisfy § 580b's criteria or for any other reason, Heritage Pacific *can* obtain a deficiency judgment against Prianto in the absence of contrary statutory authority.[4]

## 2. <u>Fair Credit Reporting Act.</u>

Section 580b makes no reference to the way deficiencies should be reported on a consumer's credit report. Those standards, rather, are supplied by the FCRA, which Congress enacted in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

"[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). Furnishers of information, such as Heritage Pacific, are prohibited from furnishing information relating to a consumer if they know or have "reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Additionally, if a consumer disputes information with a furnisher, the furnisher is

---

[4] Prianto has forfeited any argument that some other provision of California law negates the enforceability or validity of his loan, as he has never made such an argument. *In re Pac. Enters.*, 47 F.3d at 379 n. 6. Experian is aware of no such provision.

obligated to "conduct an investigation with respect to the disputed information" and accurately report the results to CRAs. *Id.* § 1681s-2(b).

The FCRA also imposes obligations on CRAs. Under the FCRA's accurate reporting provision, CRAs have the obligation to prepare consumer credit reports using "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The FCRA also imposes a reinvestigation requirement on CRAs when information is disputed, but Congress recognized that "[w]ith respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer." *Carvalho*, 629 F.3d at 892 (internal quotation marks omitted). Hence, when a consumer disputes his information, the FCRA directs a CRA to "conduct a reasonable *re*investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

Here, Prianto alleges that Experian has violated both the FCRA's accurate reporting (§ 1681e) and reinvestigation (§ 1681i) requirements. To maintain either claim, Prianto must make a prima facie showing of inaccurate reporting. *Guimond*, 45 F.3d at 1333; *Dennis*, 520 F.3d at 1069. An item on a credit report can be "incomplete or inaccurate" either because "because it is patently incorrect, or

because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (internal quotation marks omitted).

### B. THE DISTRICT COURT SHOULD BE AFFIRMED BECAUSE EXPERIAN'S REPORT OF PRIANTO'S DEBT CONTAINED NEITHER PATENT NOR LATENT INACCURACY.

As the district court correctly held, Experian is entitled to judgment on the pleadings because Prianto cannot show that Experian's report of his debt was either "patently incorrect" or "materially misleading." *See Carvalho*, 629 F.3d at 890-91. A credit report is "'patently incorrect'" if it includes "information that is inaccurate 'on its face.'" *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (quoting *Carvalho*, 629 F.3d at 891). Patent inaccuracy thus turns on the correctness of the information a credit report *contains*. A consumer report is materially misleading, in contrast, when it *omits* material information. Even if all information contained in a report is technically correct, the report is latently inaccurate if the *absence* of information renders the report "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho*, 629 F.3d at 890 (quoting *Gorman*, 584 F.3d at 1163); *accord Drew*, 690 F.3d at 1108.

### 1. **Experian's Report Was Not Latently Incorrect.**

On appeal, Prianto's principal argument is that his report contained a latent inaccuracy. Specifically, Prianto contends Experian's report was misleading because it failed to adopt and communicate his legal argument that his debt to Heritage Pacific is legally unenforceable under § 580b. AOB at 8. But as the district court held, the FCRA does not compel Experian to adjudicate the merits of such a legal dispute. The district court was thus correct that Experian's report cannot be materially misleading on this basis.

In *Carvalho v. Equifax Information Solutions*, this Court held that, as a matter of law, a CRA's credit report cannot be misleading for failing to resolve "collateral attacks on the *legal validity* of [consumers'] debts." 629 F.3d at 891 (emphasis added). In that case, a CRA reported that the plaintiff owed money to a hospital for medical services and that she had refused to pay. The plaintiff did not dispute she had contracted with the hospital, and she did not contest the amount of money reported as overdue. Rather, she complained that, under the terms of her contract with the hospital, "she was not legally obligated to pay the … bill until [the hospital] had properly billed her insurer." *Id*. In other words, she claimed that because a "condition[] precedent" to her obligation to pay had not yet been fulfilled, she was not yet legally required to pay on the contract. *Id*. & n.11.[5]

---

[5] A "condition precedent" is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. If the

This Court rejected the plaintiff's claim that the credit report was misleading because the CRA had failed to resolve the plaintiff's "legal defenses to payment." *Carvalho*, 629 F.3d at 891. The "fundamental flaw" of the plaintiff's claim, the Court reasoned, is that "credit reporting agencies are not tribunals" and are thus "ill equipped to adjudicate contract disputes." *Id*. Accordingly, the law does not require a CRA to give a "legal opinion on the merits" to a "consumer disputing the legal validity of a debt that appears on her credit report." *Id*. at 892. Suits against CRAs are "not the proper vehicle for collaterally attacking the legal validity of consumer debts." *Id*.

*Carvalho* adopted the First Circuit's reasoning in *DeAndrade v. Trans Union LLC*, which drew the same line between legal disputes appropriate for resolution by *furnishers* and *courts* and the kind of factual disputes appropriate for resolution by *CRAs*. 523 F.3d 61 (1st Cir. 2008). The plaintiff in *DeAndrade* sent a dispute letter to a CRA alleging that his mortgage was legally invalid because it had been procured by fraud. *Id.* at 64, 68. The First Circuit rejected the contention that a CRA's reporting of this mortgage might conceivably be inaccurate because the legal validity of the mortgage was disputed. *Id*. at 68. The validity of the mortgage turned on legal "questions that c[ould] only be resolved by a court of

----

(continued…)

condition does not occur and is not excused, the promised performance need not be rendered." Black's Law Dictionary (10th ed. 2014).

law, such as whether DeAndrade ratified the loan." *Id.* Such a "legal issue," the court of appeals held, is one that "a credit agency … is neither qualified nor obligated to resolve under the FCRA." *Id*.

Applying the lessons of *Carvalho* and *DeAndrade* here, Prianto's claim must fail. Like the plaintiff in *Carvalho*, Prianto concedes the existence of his debt, the amount of the money at issue, and his failure to pay. What he disputes is whether § 580b renders his particular debt enforceable. And that question of legal enforceability is precisely what *Carvalho* says a CRA has no obligation to adjudicate. Prianto and *Amici* attempt to distinguish *Carvalho* in several ways, but none is persuasive.

**a.** Prianto tries to distinguish *Carvalho* by claiming that "no legal proceeding or adjudication is necessary to determine if Mr. Prianto is obligated to pay the deficiency"; rather, "[b]y operation of California law, Mr. Prianto will never be made to pay the debt." AOB at 17. Prianto's "because I say so" argument is unpersuasive. Prianto inappropriately *assumes* the answer to the legal question underlying his claim—whether § 580b bars a deficiency judgment against him. Heritage Pacific disputes Prianto's position, ER 51 ¶¶ 20-23, and a CRA like Experian is not required to presume that a consumer will prevail on a legal defense merely because the consumer says so. *See Carvalho*, 629 F.3d at 891 (rejecting

20

argument that "consumers should be deemed innocent until proven guilty by a proper reinvestigation under the FCRA").[6]

True, Prianto's complaint *alleges* that "[t]he loan held by Heritage is subject to the terms of CCP § 580b" and that Heritage is thus "barred from obtaining a judgment against [him]." ER 50 ¶¶ 13-14; *see also* AOB at 14. But legal conclusions, unlike factual assertions, are not accepted as true on a motion for judgment on the pleadings. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (in context of 12(b) motion); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog"). And, in any event, the question is not whether Prianto can allege, or even ultimately prove, that § 580b applies to his debt *in a court of law*. It is whether the FCRA requires Experian to serve as the arbiter of Prianto's dispute with Heritage Pacific *in the first instance* and adjudge whether Prianto will prevail on his § 580b affirmative defense. *Carvalho* holds the answer to that question is "no."

---

[6] Under the FCRA, a consumer reporting agency like Experian "has no duty to report only that information which is favorable or beneficial to the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991). To the contrary, "good reason exists for the Act's failure to require a consumer reporting agency to accept representations made in a letter from a consumer advising of a dispute. Agencies have no mechanism for auditing the reliability and truthfulness of consumers. Requiring them to accept and rely upon information in letters from consumers would be an invitation to fraud." *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225, 1234 (W.D. Wis. 2005).

**b.** Prianto also claims that *Carvalho* is inapplicable because § 580b is not an affirmative defense. *See* AOB at 7-8, 16, 21. But nothing about the reasoning of *Carvalho* has anything to do with whether, when presented in *court*, a consumer's dispute about the legal validity or enforceability of a debt takes the form an affirmative defense. Indeed, *Carvalho* never even mentions whether, under California law, the fulfillment of all conditions precedent is an element of a breach-of-contract claim or whether its absence constitutes an affirmative defense. Clearly then, *Carvalho* cannot be read to suggest that anything turns on the distinction.

To be sure, *Carvalho* exhorts that CRAs need not adjudicate a "consumer's legal *defenses* to payment." 629 F.3d at 891 (emphasis added); *accord id.* at 892 (CRA need not determine "whether the consumer has a valid defense"); *id.* (CRA need not report dispute when "consumer asserts a legal defense"). But context makes clear that the Court did not use the word "defense" in a technical sense to limit its holding to disputes raised in breach-of-contract suits as affirmative defenses. Instead, it was explaining that whenever a consumer identifies a legal ground that a contract cannot be enforced *against* him, a CRA has no duty to assess that legal claim. *See, e.g.*, *id.* (CRA need not get involved when "consumer disput[es] the legal validity of a debt"); *id.* (CRA need not provide "legal opinion on the merits" about contract).

At any rate, § 580b *is* an affirmative defense, and is thus subject to waiver by a debtor who fails to raise it in a deficiency judgment action by a creditor. *Palm v. Schilling*, 199 Cal. App. 3d 63, 67 n.3 (1988); *see also, e.g.*, *Conley v. Matthes*, 56 Cal. App. 4th 1453, 1458 (1997) (describing § 580b as affirmative defense); *Clayton Dev. Co. v. Falvey*, 206 Cal. App. 3d 438, 447 (1988) (same); *Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 119 (1977) (same); *Union Bank v. Wendland*, 54 Cal. App. 3d 393, 398 (1976) (same).

In arguing otherwise, Prianto relies on *Kuns'* observation that "[t]he anti-deficiency laws' protection against post-foreclosure personal liability is complete and nonwaivable." *Kuns*, 611 F. App'x at 400 (citing *DeBerard Props. v. Lim*, 20 Cal. 4th 659, 663-664 (1999)). "But waiver may appear in different forms." *Palm*, 199 Cal. App. 3d at 67 n.3. *Kuns* and *DeBerard* concerned "contractual waiver, *i.e.*, where an agreement to give up the protection of § 580b would be the quid pro quo for some other benefit." *Id.* Under those precedents, a purchaser may not waive the protection of § 580b "by contract term … in exchange for new consideration following the original purchase money sale." *DeBerard*, 20 Cal.4th at 661-62. That case law about contractual waiver, however, does nothing to answer the very different question of whether protection under § 580b is an "affirmative defense," such that "a debtor who fails to assert section 580b … in an

action by a purchase money mortgagee 'waives' its protection." *Palm*, 199 Cal.
App. 3d at 67 n.3.

    **c.** *Amici* resist the import of *Carvalho* on yet a third ground: They claim
*Carvalho* does not apply because the legal effect of § 580b on Prianto's debt to
Heritage is "easily determined." Amicus Br. at 4. According to *Amici*, the
applicability of § 580b invariably depends on only three facts: (1) whether the loan
proceeds were used to purchase property; (2) whether the property purchased was a
dwelling for four families or less; and (3) whether the purchaser lived in the
dwelling. Amicus Br. at 30-31. And because those facts can be "readily verified"
by Experian, *Amici* reason, Amicus Br. 31, it is entirely appropriate to require
Experian to "provide a legal opinion on the merits" of Prianto's § 580b defense,
*see Carvalho*, 629 F.3d at 892.

    To begin with, the premise of *Amici*'s argument is flawed. *Carvalho* did not
turn on whether the CRAs could readily verify the plaintiff's position that the
hospital failed to properly bill her insurer. Nor did it turn on whether the legal
question disputed—whether the plaintiff breached the contract or whether a
condition precedent to her obligation to pay remained unsatisfied—was sufficiently
complicated. Rather, *Carvalho* adopted a bright-line, easily-administered rule: "A
CRA is not required as part of its reinvestigation duties to provide a legal opinion
on the merits." 629 F.3d at 892.

Conversely, *Amici*'s proposed test for determining when *Carvalho* applies would be inadministrable. How would a CRA assess the level of difficulty of a legal question? And at what point is that level of difficulty high enough to warrant applying *Carvalho*? *Amici* suggest no principled answers to these questions, and there are none. This Court should leave the line where *Carvalho* drew it: The FCRA does not impose upon a CRA the obligation to assess an argument—no matter how simple or tricky—that a debt is legally invalid or unenforceable.

Moreover, even if the Court were to adopt *Amici*'s ease-of-determination test, this case would fail it. For starters, *Amici*'s contention that a CRA like Experian can "readily verify" the three elements they identify is wrong. *See* Dennis L. Greenwald, et al., Cal. Prac. Guide Real Prop. Trans. Ch. 6-I § 6.563.1 (Rutter 2014) ("It is not always a simple task to determine whether CCP § 580b applies."). What matters for purposes of applying § 580b are the "facts and circumstances that exist at the time the debt is created." *DMC, Inc. v. Downey Sav. & Loan Ass'n*, 99 Cal. App. 4th 190, 194 (2002). And resolving disputes between consumers and furnishers over the facts and circumstances that existed at the time of the debt's creation—which, in light of the ubiquity of 30-year mortgages, might require an inquiry into circumstances years or decades past—would require CRAs to engage in the kind of adjudication suited for the courts. For example, where a consumer maintains that he intended to occupy the subject dwelling when the loan

was obtained, but the lender contends the consumer lived elsewhere, forcing CRAs to anticipate how a court would resolve that dispute might require the kind of credibility determinations to which CRAs are ill-suited.

Moreover, *Amici* are simply wrong that the availability of a deficiency judgment under § 580b depends only on the three facts they cite. The legal effect of California's anti-deficiency law is a mixed question of fact and law, and takes account of numerous factors, some of which are quite complicated. Indeed, examples abound in California jurisprudence demonstrating how challenging it can be for courts and trained lawyers (let alone CRAs) to determine whether § 580b applies.

Take, for example, *Coker v. JP Morgan Chase Bank*, currently under review in the California Supreme Court, which presents the question whether § 580b applies to short sales of purchase money loans. *See* 312 P.3d 829 (Cal. 2013). As explained in JP Morgan's Petition for Review, California courts have split on whether the borrower waives his rights to the protections of § 580b when the creditor agrees to the borrower's request to proceed with a short sale. *Compare Coker v. JP Morgan Chase Bank, NA*, 218 Cal. App. 4th 1 (2013), *with Bank of Am., NA v. Roberts*, 217 Cal. App. 4th 1386, 1398 (2013). Under Prianto and *Amici*'s approach, CRAs like Experian (rather than the California court system) should serve as the initial arbiter of these kind of complicated questions.

Similarly, California law provides that a choice-of-law provision in the deed of trust may affect the applicability of § 580b. *See Kerivan v. Title Ins. & Trust Co.*, 147 Cal. App. 3d 225, 231 (1983) ("the trustee under a deed of trust has a duty to cancel the note following a nonjudicial foreclosure in this state, whenever the laws of this state are applicable to the transaction, but need not cancel the note when the beneficiary may seek a deficiency judgment in a jurisdiction other than ours"); *Guardian Sav. & Loan Ass'n v. MD Assocs.*, 64 Cal. App. 4th 309, 323 (1998) (enforcing promissory note provision adopting Texas law which, unlike California, did not prohibit deficiency judgment after foreclosure of purchase money security interest). And a borrower's subsequent subordination of a deed of trust to a construction loan may do the same. *See Spangler v. Memel*, 7 Cal. 3d 603, 614 (1972); *DeBerard*, 20 Cal.4th at 666 ("[A] major exception to section 580b involves a vendor who subordinates his deed of trust to a major construction loan on the property." (internal quotation marks omitted; alteration in original)).

As these examples demonstrate, application of § 580b turns on more than a dry application of three readily verifiable factors. And because Experian, unlike Prianto and Heritage Pacific, was never a party to the transaction at issue, it is ill suited to play the role of a court in making that legal determination. Accordingly, *Carvalho* instructs that it need not do so.

### 2.   **Experian's Report Was Not Patently Incorrect.**

Experian's report did not contain any patent inaccuracy either. Experian reported that Prianto had a past-due account with Heritage Pacific for $96,601. That information was accurate, regardless of whether § 580b of California's anti-deficiency law applies to Prianto's debt.

**a.** Prianto has forfeited any argument that Experian's report of his debt was patently inaccurate. He failed to present any meaningful argument on this point in his opening brief, and arguments "not raised clearly and distinctly in the opening brief" are forfeited. *See McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009). He also wholly failed to raise the argument before the district court. *See* Pl.'s Mem. in Opp. to Experian's Motion for J. on the Pleadings, *Prianto v. Heritage Pac. Fin., LLC*, No. 3:13-cv-3461-TEH (N.D. Cal. Apr. 7, 2014), ECF No. 44. That failure, too, independently operates to forfeit the issue. *United States v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994) ("Issues not presented to the district court cannot generally be raised for the first time on appeal.").

**b.** In any event, Experian's report of Prianto's debt was not patently inaccurate as a matter of law. *Amici* disagree, arguing that Experian's report would be facially correct only if it reported that Prianto had a $0 balance. *See* Amicus Br. at 19-29. But *Amici*'s position relies on the same mistaken arguments discussed above and rejected by *Carvalho*—that CRAs are obligated to adjudicate the

validity of a consumer's § 580b defense, and that Experian should have resolved that dispute here in Prianto's favor.

Further, *Amici*'s patent inaccuracy argument fails because it is predicated on a misunderstanding of California's anti-deficiency laws. Even if § 580b did apply to Prianto's debt, that provision does not "extinguish" his debt. "Section 580b, by its own terms, eliminates a creditor's ability to seek a deficiency judgment, but it does not eliminate the underlying debt." *Herrera v. LCS Fin. Servs. Corp.*, No. C09-2843, 2009 WL 2912517, at *8 (N.D. Cal. Sept. 9, 2009).

Because § 580b does "not … purport to wipe out the debt," *Mortg. Guar. Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942), both the debt and the debtor-creditor relationship survive foreclosure. *See, e.g.*, *Redingler v. Imperial Sav. & Loan Ass'n*, 47 Cal. App. 3d 48, 50 (1975) (holding that the debtor-creditor relationship between the parties was not extinguished during foreclosure proceedings where the property was purchased for less than the balance due); *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 1615 n.5 (1995) ("Although the lender may not obtain a deficiency judgment after a foreclosure by power of sale, the foreclosure does not extinguish the debt." (internal citation omitted)). In other words, while the anti-deficiency statute prohibits a judicial remedy, it does so without eliminating the underlying right. *Sampsell*, 51 Cal. App. 2d at 185-86; *Gottschalk v. Draper Cos.*, 23 Cal. App. 3d 828, 831 (1972) ("The obligation of

29

the maker of a note secured by a purchase-money mortgage or deed of trust is not discharged by the provisions of Code of Civil Procedure section 580b. Instead, only recovery against him on the note is barred by this section." (emphases removed)).

Even *Amici* admit as much. Amicus Br. at 20 (explaining that § 580b does not "entirely extinguish" a debt). As *Amici* acknowledge, a debt governed by § 580b manifestly "remains intact" because it can be recovered through means other than a deficiency judgment. *Id.* For example, where a borrower pledges additional security for a loan, the lender can recover that security even when § 580b bars a deficiency judgment. *E.g.*, *Redingler*, 47 Cal. App. 3d at 50; *Sampsell*, 51 Cal. App. 2d at 186. And where third parties guarantee the loan, the lender can recover the debt from those guarantors even if § 580b precludes a deficiency judgment. *E.g.*, *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 35 (2015); *Gottschalk*, 23 Cal. App. 3d at 830.

Not surprisingly, therefore, every court to consider *Amici*'s argument that debts governed by § 580b must be reported with a zero balance has rejected it. *See Vargas v. Bank of Am., N.A.*, No. 12-CV-2247-L, 2013 WL 1386342, at *4 (S.D. Cal. Apr. 4, 2013) ("the claim that section 580b erases the debt must fail as a matter of law"); *Murphy v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-555-TLN-EFB, 2014 WL 2875635, at *5 (E.D. Cal. June 24, 2014) ("To the extent Plaintiffs'

claim rests upon the theory that the debt is completely erased, this Court, adhering to the weight of the case law, does not find that § 580b has that effect."); *Johnson v. Wells Fargo Home Mortg., Inc.*, No. 13-01044, 2013 WL 7211905, at *7 (C.D. Cal. Sept. 13, 2013) (rejecting argument that it is inaccurate for a furnisher to report the balance owed on a mortgage covered by § 580b).

**c.** Against the weight of this uniform precedent, *Amici* contend that Experian is compelled to report a $0 balance by booklet of "Reporting Guidelines" published by the Consumer Data Industry Association and a compilation of "Staff Interpretations of the CRA" by the FTC. *See* Amicus Br. at 23-29. Unsurprisingly *Amici* offers no explanation as to why this Court should follow guidelines published by a private trade association, or a nonbinding report by the staff of an agency without rulemaking authority under the FCRA,[7] over the reasoned decisions of numerous district courts in this Circuit. And there is none.

Indeed, reporting that Prianto had $0 balance on his account with Heritage Pacific would itself be inaccurate. It would incorrectly suggest that Prianto is *more* creditworthy than he is. As *Carvalho* explained:

> [A] consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not,

---

[7] *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority").

regardless of how legally sound her reasons for default are. That she defaulted is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply.

*Carvalho*, 629 F.3d at 891.

Moreover, the FTC guidance discusses only how CRAs should report debts that have *already been discharged* in bankruptcy court, not debts that a consumer alleges *should be* rendered unenforceable by operation of § 580b. The FTC's report, therefore, simply reaffirms Experian's argument that CRAs are responsible for reporting court decisions, not making them. In any event, *Amici*'s "comparisons to bankruptcy are … flawed" on an even more basic level because "the separate and complex statutory framework governing bankruptcy has little bearing on the meaning of section 580b." *Herrera*, 2009 WL 2912517, at *6.

In sum, everything that Experian reported about Prianto's loan accounted was factually true: (1) that Prianto had a loan account with Heritage; (2) that the balance of the loan account was $96,601; and (3) that the loan account was past due. Because all of this information was correct as a matter of law, Prianto cannot establish a prima case for his FCRA claims on the basis of any patent inaccuracy.

### C.  PRIANTO SHOULD RESOLVE HIS DISPUTE WITH THE FURNISHER OF INFORMATION.

Affirming the judgment below will not leave Prianto, or any other homebuyer in his shoes, in the lurch. Far from it, consumers who dispute the legal validity of their debts have numerous tools through which they may "attempt to

32

resolve the matter directly with the creditor or furnisher." *Carvalho*, 629 F.3d at 892.

**1.** The district court's reasoned opinion correctly applied the principle— expressed in *Carvalho* and embodied in this Court's recent memorandum disposition in *Kuns*—that the proper way for a consumer to resolve a dispute with a furnisher is "directly at the furnisher level." *Carvalho*, 629 F.3d at 892. Unlike a CRA, a furnisher has a direct relationship with the consumer. *Id.* And because of its closer relationship with the consumer, a furnisher "'stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation.'" *Id.* (quoting *Gorman*, 584 F.3d at 1156). It is sensible, then, that *Carvalho* directs consumers to look to furnishers, not to CRAs, when they dispute a debt on legal grounds.

When a consumer disputes the legal validity of his debt, he has at least three potential remedies at the furnisher level. First, he may attempt voluntary, informal discussion with the furnisher.

Second, if such extrajudicial negotiation proves unsuccessful, the consumer may sue the furnisher for a declaratory judgment as to the enforceability of his debt under § 580b. *See* Cal. Code Civ. Proc. § 1060 ("Any person … who desires a declaration of his or her rights or duties with respect to another … may, in cases of actual controversy relating to the legal rights and duties of the respective parties,

bring an original action ….”); *Carvalho*, 629 F.3d at 891 (“The proper recourse for the consumer [in *DeAndrade*] … was to resolve the issue in a suit against the creditor ….”); *Prunty v. Bank of Am.*, 37 Cal. App. 3d 430, 443 (1974) (affirming declaratory judgment that § 580b barred bank from recovering deficiency judgment against plaintiffs).

Third, a consumer may sue the furnisher under the FCRA. *See Kuns*, 611 F. App’x at 400 (holding that a consumer may assert an FCRA claim against a *furnisher* for reporting a consumer’s loan to a CRA without divulging that anti-deficiency laws preclude a deficiency judgment). Although the FCRA does not hold CRAs responsible for resolving legal disputes about a debt, furnishers stand on different footing. “Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about ‘collateral attacks’ because the creditor is not a party to the suit, while claims against furnishers … do not raise this consideration because the furnisher *is* the creditor on the underlying debt.” *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008).

**2.** Prianto and his *Amici* misguidedly invoke this Court’s memorandum disposition in *Kuns* in support of their position. But *Kuns* proves Experian’s point: When a consumer disputes the legal validity of his debt, the proper course of action is to resolve the dispute with the furnisher of information.

In *Kuns*, the plaintiff sued a furnisher of consumer credit information for reporting that he owed a debt without explaining that the plaintiff was not personally liable for that debt under § 580b and § 580d of California's anti-deficiency laws. Appellant's Op. Br. at 3, 10-14, *Kuns v. Ocwen Loan Servicing, LLC*, No. 13-55562 (9th Cir. Oct. 4, 2013), ECF No. 10-1. The furnisher did not dispute that the anti-deficiency laws applied to the loan. *See* Appellee's Answering Br. at 1, *Kuns v. Ocwen Loan Servicing, LLC*, No. 13-55562 (9th Cir. Dec. 4, 2013), ECF No. 16. The question presented was whether, *accepting* that the anti-deficiency laws precluded the furnisher from seeking a deficiency judgment, it was inaccurate for the *furnisher* to report the debt without also disclosing that it could not obtain a deficiency judgment.

In *Kuns* the furnisher contended that the reasoning of *Carvalho* should be *extended* to furnishers. *See* Appellee's Answering Br. at 15. Specifically, the furnisher maintained that because a CRA is not required to adjudicate the applicability of legal defenses to the enforceability of a debt, a furnisher should not be required to anticipate or adjudicate such defenses either. *See id*. In response, the plaintiff did not dispute that *Carvalho* would bar his claim against a CRA. *See* Reply Br. at 14-15, *Kuns v. Ocwen Loan Servicing LLC*, No. 13-55562 (9th Cir. Jan. 17, 2014), ECF No. 21. He argued simply that furnishers should be treated

differently under the FCRA because *Carvalho* expressly instructed that such disputes *should* be resolved at the furnisher level.[8] *Id.*

The *Kuns* panel agreed with the plaintiff: A consumer may sue a *furnisher* of information for reporting a mortgage debt concededly covered by § 580b "[un]accompanied by additional information to indicate … lack of personal liability." *Kuns*, 611 F. App'x at 399. In so holding, the panel plainly did *not* reject the parties' shared understanding that *Carvalho* precludes suit against the *CRAs*. Indeed, it would have been improper for the Court to do so, as that question was not before the Court.

The limited holding of *Kuns* does not assist Prianto here. First, unlike in *Kuns*, here it *is* disputed whether § 580b would apply to Prianto's debt. In contrast to the furnisher in *Kuns*, Heritage Pacific has disagreed that § 580b bars a deficiency judgment against Prianto. Indeed, Heritage Pacific has continued to instruct Experian to report Prianto's debt. ER 51 ¶¶ 20-23. But even more fundamentally, Prianto here sues a CRA, not a furnisher. And *Kuns* in no way limited *Carvalho*'s holding that CRAs are not responsible under the FCRA for

---

[8] *Amici* supporting Prianto also filed an Amicus Brief in *Kuns*. That brief acknowledged and defended *Carvalho*'s distinction between CRAs and furnishers, reasoning that the furnisher of information "is 'in a far better position' than the credit bureau to evaluate its own reports to the credit bureau," and to determine whether the borrower's loan is a purchase money mortgage under section 580b. Amicus Curiae Br. at 30-31, *Kuns v. Ocwen Servicing LLC*, No. 13-55562 (9th Cir. Feb. 24, 2014), ECF No. 24-2.

adjudicating legal disputes. *Kuns* only makes clear that, as *Carvalho* directed, a consumer may appropriately resolve his dispute about the applicability of § 580b directly at the furnisher level.

**3.** Prianto also suggests that, even if *other* consumers might be able to resolve disputes about the applicability of § 580b to their debts, he cannot because Heritage Pacific has filed for bankruptcy. Even if this were true—and it is not— there is no bankruptcy exception to *Carvalho*. A CRA remains "ill equipped to adjudicate contract disputes" whether or not a furnisher has declared bankruptcy, and the FCRA thus categorically excuses CRAs from resolving such disputes. *Carvalho*, 629 F.3d at 891. The scope of the FCRA should not be expanded for Prianto because of the financial status of his particular furnisher.

In any event, Heritage Pacific's bankruptcy filing did not preclude Prianto from resolving his dispute with Heritage Pacific directly. When Heritage Pacific filed for bankruptcy, its bankruptcy petition operated to stay this judicial proceeding as to Heritage. *See* 11 U.S.C. § 362. Notwithstanding the stay, however, Prianto retained myriad ways to resolve his legal argument at the furnisher level.

First, Prianto could have endeavored to informally obtain Heritage Pacific's agreement that § 580b applies to his claim. In fact, however, Prianto has *never* contacted Heritage Pacific directly to dispute its reports. *See* ER 15.[9]

Second, Prianto could have sought relief from the stay to permit this suit to proceed to judgment. *See* 11 U.S.C. § 362(d); *In re Santa Clara Cnty. Fair Ass'n, Inc.*, 180 B.R. 564, 566-67 (B.A.P. 9th Cir. 1995) (affirming bankruptcy court's order lifting automatic stay); *In re Neal*, 176 B.R. 30, 34 (Bankr. D. Idaho 1994) (lifting automatic stay in part).

Third, even if Prianto's request for relief from the automatic stay were denied, Prianto could have sought a declaratory judgment as to the enforceability of his debt under § 580b. Although the automatic stay may have precluded Prianto from seeking a declaratory judgment in the *California* courts, it would *not* have precluded him from seeking the declaration in *federal bankruptcy court* via an adversarial proceeding. *See* Fed. R. Bankr. P. 7001(1), (2), (9); *In re Flo-Lizer, Inc.*, 946 F.2d 1237 (6th Cir. 1991) (adjudicating action, brought in bankruptcy court, for declaratory judgment that certain items were not part of the bankruptcy estate).

---

[9] When a furnisher *concedes* that a debt it has reported is in fact *not* legally enforceable, the FCRA requires the furnisher to communicate that information to the CRAs. *See Murphy*, 2014 WL 2875635; *Johnson*, 2013 WL 7211905.

Fourth, Prianto could have pursued a FCRA claim against Heritage Pacific. True, the bankruptcy stay may have prevented him from pursuing this claim through a lawsuit in the district court below. But Prianto could have filed a proof of claim in the bankruptcy proceeding seeking damages for Heritage Pacific's alleged FCRA violation. *See* Fed. R. Bankr. P. 3001.

It may be that *now*, almost two years after Heritage Pacific filed for bankruptcy, the bankruptcy proceedings have progressed to a point where some of these avenues for relief are no longer open to Prianto. But if that is the case, the blame lies with Prianto for sitting on his rights. This Court should not craft a special exception to the reach of the FCRA because Prianto chose not to timely pursue the remedies available to him. Under *Carvalho*, the one course closed to Prianto before Heritage Pacific's bankruptcy filing, after the filing, and today is to collaterally attack his debt by bringing a FCRA suit against Experian. Yet that is the one course Prianto chose to take. This Court should not depart from settled precedent to relieve Prianto of the consequences of that decision.

## D. *CARVALHO* REJECTED PRIANTO'S ARGUMENT THAT AN EXPLANATORY STATEMENT IS INSUFFICIENT.

In addition to instructing consumers to resolve disputes over legal defenses to debt directly at the furnisher level, *Carvalho* emphasized that consumers may demand that a CRA include a note in their credit report setting out their legal argument why a debt is invalid or enforceable. The "FCRA … allow[s] consumers

who are dissatisfied by a reinvestigation to file a brief explanatory statement to be reported along with the disputed item." *Carvalho*, 629 F.3d at 892 (citing 15 U.S.C. § 1681i(b)-(c)).

Prianto rejects this remedy. He complains that an explanatory statement is useless, largely because creditors rely on algorithms to interpret credit reports and those algorithms do not take account of explanatory statements. AOB at 21-24. But Prianto's attorney made the *same* argument in *Carvalho* after the panel issued its opinion. He maintained that CRAs like Experian should be required to adjudicate the validity of a consumer's asserted legal defense because adding an explanatory statement to the consumer report is an ineffectual remedy. "Those familiar with the credit reporting system know that this written statement as a practical matter is virtually worthless." Br. of *Amici* Curiae in Supp. of Pl.'s Pet. for Rehearing or Rehearing En Banc at 18, *Carvalho v. Equifax Info. Solutions, LLC*, No. 09-15030 (9th Cir. Sept. 20, 2010), ECF No. 36-2.

The *Carvalho* panel issued an amended opinion rejecting that argument, holding that even if an explanatory statement does not "obliterate the stain of a derogatory item" on a consumer's credit report, that "merely reinforces our view that a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level. If successful, the consumer can clear her credit

report without the need for any explanatory statements.  That Carvalho failed to do so is no fault of the CRAs."  629 F.3d at 892.

As in *Carvalho*, if Prianto is unsatisfied with filing an explanatory statement, he should dispute the legal enforceability of his debt directly at the furnisher level. If Prianto prevails in a court action against Heritage Pacific and reports that to Experian, Experian will be obligated to update Prianto's consumer report.  But while the FCRA holds Experian responsible for *reading* court judgments submitted with a consumer's dispute, the law does not require Experian to *predict* those court judgments.  Asking Experian to divine how a court would rule on Prianto's dispute with Heritage Pacific *before* any court has done so invites improper collateral attacks on debts, and unfairly forces Experian to step into the role of a legal tribunal.  The FCRA directs consumers to seek direct and actual court adjudication of their legal questions, not to force those questions on CRAs.

## VII.  **CONCLUSION**

For the foregoing reasons, the district court's order granting judgment on the pleadings should be affirmed.

Dated: October 23, 2015   Respectfully submitted,

           Jones Day


           By: /s Nathaniel P. Garrett
             Nathaniel P. Garrett
           Attorneys for Defendant-Appellee
           EXPERIAN INFORMATION
           SOLUTIONS, INC.

## STATEMENT OF RELATED CASES

Defendant-Appellee is aware of no related cases pending before the Court.

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP.
32(A)(7)(C) AND CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify

that the attached brief is proportionately spaced, has a typeface of 14 points, and

contains 9,896 words.

Dated:  October 23, 2015              By: /s Nathaniel P. Garrett
                                          Nathaniel P. Garrett

                                      Attorney for Defendant-Appellee
                                      EXPERIAN INFORMATION
                                      SOLUTIONS, INC.

9th Circuit Case Number(s)

14-16456

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

10/23/2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

s/ Julia Fong Sheketoff

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)